THE SEHAT LAW FIRM, PLC
Cameron Sehat, Esq. (SBN 256535)
18881 Von Karman Ave., Ste. 850
Irvine, CA 92612
Telephone: (949) 825-5200
Facsimile: (949) 313-5001
cameron@sehatlaw.com

Attorney for Plaintiff, John Ruccinni

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN RUCCINNI, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF CALIFORNIA, a government entity; CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, a government entity; CLARKE, an individual; MAKARDE, an individual; MASON, an individual; MAUX, an individual; GRAVES, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES:**<br><br>1. Deliberate Indifference to a Substantial Risk of Harm to Health and Safety - 42 U.S.C. § 1983<br><br>2. Cruel and Unusual Punishment - Violations of the 8th and 14th Amendment of the United States Constitution<br><br>3. Liability for Unconstitutional Custom or Policy - 42 U.S.C. § 1983<br><br>4. Negligence<br><br>5. Negligent Hiring, Retention, Training<br><br>**DEMAND FOR JURY TRIAL** |

## PRELIMINARY STATEMENT

1. Plaintiff, John Ruccinni (hereinafter "RUCCINNI"), an inmate at the

California State Prison, Los Angeles County (hereinafter "CSP"), a division of California Department of Corrections and Rehabilitation (CDCR), brings this action against the State of California (hereinafter "STATE"), CDCR, Correctional Officer Clarke (hereinafter "CLARKE"), Correctional Officer Makarde (hereinafter "MAKARDE"), Correctional Officer Mason (hereinafter "MASON"), Correctional Officer Maux (hereinafter "MAUX"), Correctional Officer Graves (hereinafter "GRAVES") and DOES 1-10, for monetary damages to redress his injuries resulting from defendants' deliberate indifference to his rights and liberties. RUCCINNI brings this action under the Eighth Amendment of the United States Constitution and the Civil Rights Act of 1871, as codified at 42 U.S.C. § 1983, for injuries suffered as a result of the defendants' substantial and deliberate indifference to his health and safety. RUCCINNI also brings state claims, including Negligence, Negligent Hiring, Retention and training, and violation of California Code Regulation Title 15, against the defendants for their intentional and negligent conduct which resulted in the subject incident. This is a civil action seeking damages against the defendants for committing acts under color of law, and depriving the plaintiff of rights secured by the Constitution and laws of the United States (42 U.S.C. § 1983). Defendants, the STATE, CDCR, CLARKE, MAKARDE, MASON, MAUX, GRAVES, corrections officials, management and employees including DOES 1-10, were deliberately indifferent by, without limiting other acts and behaviors: failing to follow its established safety procedures; failing to protect plaintiff from harm; failing to provide necessary and appropriate security measures; and, failing to provide necessary and appropriate personnel necessary for the safety, welfare and protection of RUCCINNI, an inmate at CSP. The defendants deprived the plaintiff's rights as guaranteed by the Eight and Fourteenth Amendments to the Constitution of the United States.

2. The defendants, the STATE, CDCR, CLARKE, MAKARDE, MASON,

MAUX, GRAVES and DOES 1-10 violated the plaintiff's constitutional rights and were deliberately indifferent by, without limiting other acts and behaviors: (1) placing a known violent inmate in Plaintiff's cell, (2) failing to protect Plaintiff during a brutal attack by another inmate, (3) failing to properly screen and segregate violent inmates, (4) failing follow procedure by checking logs and lists to identify where inmates reside, (5) failing to follow its established safety procedures, (6) failing to provide necessary and appropriate security measures, (7) failing to intervene or stop the assault on Plaintiff, (8) failing to provide medical care within a reasonable time; and, (9) failing to provide necessary and appropriate personnel necessary for the safety, welfare and protection of inmate RUCCINNI. As a consequence of the defendants' actions, RUCCINNI suffered debilitating physical and emotional injuries, emotional distress and deprivation of his constitutional rights.

## JURISDICTION AND VENUE

3. This action is filed under the Eighth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983, to redress injuries suffered by the plaintiff at the hands of defendants.

4. By a Government Claim Form dated August 12, 2015, pursuant to Government Code §911.2, the State of California, through its Clerk of the Board of Supervisors, was sent a Notice of Claim regarding violations of plaintiff's constitutional rights. The claim stated the time, place, cause, nature and extent of the plaintiff's injuries.

5. On August 27, 2015, the State of California, through its Clerk of the Board of Supervisors, sent a notice of Rejection of Claim to counsel for Plaintiff.

6. This Court has jurisdiction over the federal civil rights claim pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over any state-law claims pursuant to 28 U.S.C. § 1367(a).

7. At all relevant times, the plaintiff, RUCCINNI, was an inmate at CSP, operated by the CDCR, a subdivision of the STATE.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c).

## PARTIES

9. Plaintiff RUCCINNI is an individual residing in California. At all times relevant to this complaint, the plaintiff was an inmate at CSP located at 44750 60th Street West, Lancaster, CA 93536.

10. Defendant the STATE is a government entity that acts through individuals to establish its policies and that is capable of being sued under federal law.

11. Defendant CDCR is a duly organized public entity, form unknown, existing under the laws of the State of California is responsible for supervising and operating the CSP, a corrections division, and ensuring the health and safety of all inmates incarcerated in its corrections facilities.

12. Defendant CLARKE is a correctional officer at all times relevant to the complaint. She was a duly authorized employee and agent of CSP, and was acting under color of law within the course and scope of her perspective duties as a Correctional Officer and with the complete authority and ratification of her principal, CDCR. Defendant CLARKE is sued in her individual and official capacity.

13. Defendant MAKARDE is a correctional officer at all times relevant to the complaint. He was a duly authorized employee and agent of CSP, and was acting under color of law within the course and scope of his perspective duties as a Correctional Officer and with the complete authority and ratification of his principal, CDCR. Defendant MAKARDE is sued in his individual and official capacity.

14. Defendant MASON is a correctional officer at all times relevant to the complaint. He was a duly authorized employee and agent of CSP, and was acting

under color of law within the course and scope of his perspective duties as a Correctional Officer and with the complete authority and ratification of his principal, CDCR. Defendant MASON is sued in his individual and official capacity.

15. Defendant MAUX is a correctional officer at all times relevant to the complaint. He was a duly authorized employee and agent of CSP, and was acting under color of law within the course and scope of his perspective duties as a Correctional Officer and with the complete authority and ratification of his principal, CDCR. Defendant MAUX is sued in his individual and official capacity.

16. Defendant GRAVES is a correctional officer at all times relevant to the complaint. He was a duly authorized employee and agent of CSP, and was acting under color of law within the course and scope of his perspective duties as a Correctional Officer and with the complete authority and ratification of his principal, CDCR. Defendant GRAVES is sued in his individual and official capacity.

17. Defendant DOES 1 - 10 are correctional officers at all times relevant to the complaint. They are duly authorized employees and agents of the CDCR, and were acting under color of law within the course and scope of their perspective duties as Correctional Officers and with the complete authority and ratification of their principal, Defendant CDCR. Defendant DOES 1 - 10 are sued in their individual and official capacities.

18. At all times relevant, Defendants CLARKE, MAKARDE, MASON, MAUX, GRAVES, and DOES1-10 were duly appointed officers and/or employees or agents of CDCR, subject to oversight and supervision by CDCR's elected and non-elected officials.

19. At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every defendant herein.

## FACTUAL ALLEGATIONS

20. On or about August 17, 2014, RUCCINNI was remanded to the custody of the CDCR pursuant to a parole violation.

21. On or about November 5, 2014, RUCCINNI was transferred and placed in the custody of CSP.

22. Plaintiff, RUCCINNI, at all relevant times, while an inmate at CSP, was assigned to administrative segregation; which meant he was in a single cell without any cellmates (cell number 105). This cell was exclusively designated for RUCCINNI and had his, and only his, identifying information on outside of the cell door.

23. On or about June 1, 2015, RUCCINNI was escorted by a correctional officer from his cell to a group therapy session.

24. At the time when RUCCINNI was escorted from his cell to a group therapy, Defendant CLARKE was the tower officer.

25. While RUCCINNI was attending his group therapy and while CLARKE was the tower officer, Defendant MAKARDE suspiciously escorted another inmate, Mr. Venezuela, into RUCCINNI's cell and allowed him to lie in wait for RUCCINNI. At no point did CLARKE notify or bring to the attention of MAKARDE that he was placing the wrong inmate in RUCCINNI's cell. Nor did MAKARDE verify whether he was placing the correct inmate in the designated cell, considering that there was a name tag on the cell door which was assigned exclusively to RUCCINNI. Thus MAKARDE placed a known violent inmate inside RUCCINNI's cell, a cell exclusively assigned to RUCCINNI and with his identifying information on it.

26. Upon information and belief, Mr. Venezuela was placed in RUCCINNI's cell as a form of punishment against RUCCINNI, by the Defendants. Because of Venezuela's numerous prior assaults on staff members/correctional officers, Defendants placed him inside RUCCINNI's cell when fully aware of the inevitable assault. Defendants were not only aware of the inevitable assault, rather they were initiating it.

27. Mr. Venezuela then hid under RUCCINNI's bunker, awaiting RUCCINNI's return in order to viciously attack him.

28. Once RUCCINNI's group therapy concluded he was escorted by Defendant MASON back to his cell (Cell #105).

29. Upon RUCCINNI's return from his group therapy, CLARKE had been relieved of her tower duties and the new watch tower officers included Defendants MAUX and GRAVES. Both Defendants MAUX and GRAVES failed to notify or alert Defendant MASON that another inmate had already been placed in RUCCINNI's cell.

30. Once RUCCINNI was placed back in his cell and the doors slammed closed behind him, Venezuela surprised RUCCINNI by attacking and slashing him in the back of the neck and knocking RUCCINNI to the ground. Mr. Venezuela continued to kick and cut RUCCINNI with a make shift knife (toothbrush and two razor blades) as he was laying unconscious and helplessly on the ground. At no time did Defendants MAUX or GRAVES warn or relate to MASON that an inmate had already been placed in cell number 105, which was exclusively assigned to RUCCINNI.

31. Upon hearing the commotion coming from RUCCINNI's cell, one of the neighboring inmates started screaming "MAN DOWN" to which a few Defendants (number Defendants unknown) responded to.

32. Once the Defendants arrived at RUCCINNI's cell they observed as Mr.

Venezuela was still viciously kicking and slashing RUCCINNI. Instead of interjection or making any attempts to stop the vicious attack, one of the Defendants threw a set of handcuffs inside the cell and simply requested that Mr. Venezuela stop the assault. Mr. Venezuela, not intimidated by the officers request, continued his assault. Moments later, one of the Defendants asked Mr. Venezuela "Haven't you done enough?". At this point Mr. Venezuela looked down at RUCCINNI, who was bleeding profusely and responded, "I guess so" and then he stopped the attack. Mr. Venezuela then put the handcuffs on himself.

33. Once Mr. Venezuela placed the handcuffs on he was taken out of the cell. Then RUCCINNI was dragged out. However, he was left laying and bleeding outside of his cell while the "Gang Response Unit" arrived and started taking pictures.

34. Defendants had the means and opportunity to prevent the attack from occurring or continuing but deliberately failed to do so and were deliberately and wantonly indifferent to Plaintiff's safety.

35. The CDCR division of corrections officials, management and employees violated the plaintiff's constitutional rights and were deliberately indifferent to Plaintiff's constitutional liberty and safety interests per 42 USC §1983 by: (1) placing a known violent inmate in Plaintiff's cell (2) failing to protect Plaintiff during a brutal attack by co-inmate; (3) failing to properly screen and segregate violent inmates; (4) failing follow procedure by checking logs and lists to identify where inmates reside; (5) failing to follow its established safety procedures; (6) failing to provide necessary and appropriate security measures; (7) failing to intervene or stop the assault on Plaintiff; (8) failing to provide medical care within a reasonable time; and, (9) failing to provide necessary and appropriate personnel necessary for the safety, welfare and protection of inmate RUCCINNI.

36. The brutal assault inflicted upon the plaintiff continued well after plaintiff

had lost consciousness and was not stopped until the Mr. Venezuela himself chose to stop while the Defendants were simply observing. RUCCINNI's life was on the line and yet none of the Defendants used any force whatsoever, not even pepper spray, in attempt to stop the assault.

37. RUCCINNI was left bleeding in the hallway for approximately twenty (20) minutes before receiving any emergency treatment. After an initial emergency treatment at CSP, RUCCINNI was transported to an ambulance, and thereafter, to a hospital where he was treated with multiple facial orbital fractures, severe head injury, multiple lacerations to his head, neck and arms, approximately sixty stitches (approximately twenty one stitches to his head and approximately thirty nine to his left arm) and impaired vision. Additionally, Plaintiff was unable to eat and sleep normally and was forced to use a wheelchair as a result of the attack.

38. Once Plaintiff's medical condition was stabilized, he was released from the care of hospital; however, because Plaintiff has suffered significant and debilitating injuries, he will require future medical care reasonably necessary as part of his medical recovery.

## FIRST CLAIM FOR RELIEF
### Deliberate Indifference to a Substantial Risk of Harm to Health and Safety (42 U.S.C. § 1983)
### (Against All Defendants)

39. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 38 of this Complaint with the same force and effect as if fully set forth herein.

40. Defendants, CLARKE, MAKARDE, MASON, MAUX, GRAVES, and DOES 1 - 10, knew, or had reason to know, that Plaintiff was going to be viciously attacked whereby the attack was made possible by the actions of the defendants. Mr. Venezuela was intentionally, or at the very least improperly, placed in Plaintiff's cell in order to initiate an assault. None of the tower officers defendants

ever objected, interfered or corrected the other defendants from placing either Mr. Venezuela, or Plaintiff thereafter, in Plaintiff's cell.

41. The Defendants, CLARKE, MAKARDE, MASON, MAUX, GRAVES, and DOES 1 - 10, were deliberately indifferent to a substantial risk of harm to the health and safety of plaintiff by placing an inmate known for his violent propensities in Plaintiff's cell, failing to protect Plaintiff during a brutal attack by co-inmate, failing to provide sufficient staff at the unit where the plaintiff was housed, failing to follow its established safety procedures and failing to provide necessary and appropriate security measures.

42. As a result of the conduct of Defendants, CLARKE, MAKARDE, MASON, MAUX, GRAVES, and DOES 1 - 10, defendants are liable for Plaintiff's injuries because they were integral participants in a blunt act of deliberate indifference, and because they failed to prevent or intervene to prevent the onset or the progression of the vicious assault by the other inmate.

43. As a result of the conduct of Defendants, CLARKE, MAKARDE, MASON, MAUX, GRAVES, and DOES 1 - 10, such conduct further constitutes willful, wanton, malicious acts done with an evil motive and intent and a reckless disregard for the rights and safety of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages as to Defendants, CLARKE, MAKARDE, MASON, MAUX, GRAVES, and DOES 1 - 10.

44. Accordingly, Defendants, CLARKE, MAKARDE, MASON, MAUX, GRAVES, and DOES 1 - 10, each are liable to Plaintiff for compensatory and punitive damages under 42 U.S.C. § 1983.

### SECOND CLAIM FOR RELIEF
**Cruel and Unusual punishment-Violations of the 8th and 14th Amendments of the United States Constitution**
**(Against All Defendants )**

45. Plaintiff repeats and re-alleges and reincorporates each and every allegation in paragraphs 1 - 44 of this Complaint with the same force and effect as if fully set forth herein.

46. Defendants, CLARKE, MAKARDE, MASON, MAUX, GRAVES, and DOES 1 - 10, by their act of deliberate indifference in placing the wrong inmate in Plaintiff's exclusive cell, failing to put a stop to the vicious assault upon the plaintiff and the conduct thereof constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendment of the Constitution.

47. Defendants and each of them having had actual knowledge that the Plaintiff would be attacked and in fact was being attacked and there existed a pervasive risk of harm to plaintiff, constituted nothing less than a form of cruel and unusual punishment inflicted against an inmate as prohibited by the 8th amendment of the United States' Constitution.

48. As a direct and proximate results of the aforedescribed unlawful and deliberately indifferent actions of the defendants, committed under color of law and under their authority as correctional officers of CSP, Plaintiff suffered grievous bodily harm and was deprived of his right to be free from a cruel and unusual punishment as proscribed by the Eight and Fourteenth Amendment of the United States Constitution.

49. Accordingly, Defendants, CLARKE, MAKARDE, MASON, MAUX, GRAVES, and DOES 1 - 10, by subjecting plaintiff to cruel and unusual punishment in violation of the Eight and Fourteenth Amendment of the Unites States Constitutions are each are liable to Plaintiff for compensatory damages.

### THIRD CLAIM FOR RELIEF
**Liability for Unconstitutional Custom or Policy (42 U.S.C. § 1983)**
**(Against Defendants STATE, CDCR and DOES 1-10)**

50. Plaintiff hereby repeats, re-states, and incorporates each and every allegation in paragraphs 1 through 49 of this Complaint with the same force and effect as if fully set forth herein.

51. On and for some time prior to November 5, 2014 (and continuing to the present date) Defendants STATE, CDCR, and DOE supervisors deprived Plaintiff of the rights and liberties secured to him by the Fourth and Fourteenth Amendments to the United States Constitution, in that said defendants and their supervising and managerial employees, agents, and representatives, acting with reckless and deliberate indifference to the rights and liberties of Plaintiff and of persons in his class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized county custom, policy, and practice of:

    (a)    Employing and retaining as Correctional Officers and other personnel, including Defendants CLARKE, MAKARDE, MASON, MAUX, GRAVES, and DOES 1 - 10, who Defendants STATE and CDCR at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating inmates by failing to follow written CDCR correctional and inmate policies as well as failing to follow the California Code of Regulation Title 15, Division 3;

    (b)    Of inadequately supervising, training, controlling, assigning, and disciplining CDCR personnel, including CLARKE, MAKARDE, MASON, MAUX, GRAVES, and DOES 1 - 10, who Defendants STATE and CDCR each knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

    (c)    By maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the intentional misconduct by CLARKE, MAKARDE, MASON, MAUX, GRAVES, and DOES 1 - 10, who are CDCR correctional officers;

    (d)    By having and maintaining an unconstitutional custom and practice of allowing inmate-on-inmate attacks to go unchecked which further encourages and ensures a continued trend of the same in the future. These

customs and practices by CDCR were condoned by said defendants in deliberate indifference to the safety and rights of its inmates, including Plaintiff.

52. By reason of the aforementioned policies and practices of Defendant CDCR, Plaintiff has suffered severe pain and suffering, mental anguish, humiliation, and emotional distress.

53. Defendants STATE and CDCR, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Plaintiff, and other individuals similarly situated.

54. By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, Defendants STATE and CDCR acted with an intentional, reckless, and callous disregard for the well-being of Plaintiff and his constitutional as well as human rights.

55. Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by Defendants STATE and CDCR were affirmatively linked to and were a significantly influential force behind the Plaintiff's injuries.

56. Accordingly, Defendants STATE and CDCR each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

## FOURTH CLAIM FOR RELIEF
### NEGLIGENCE
**(Against All Defendants)**

57. The allegations set forth in paragraphs 1 through 56 are incorporated herein by reference.

58. Defendants owed a duty of care toward Plaintiff and were required to use

reasonable diligence to ensure that plaintiff was not harmed by defendants' acts or omissions. Defendants' actions and omissions were negligent and reckless, including but not limited to:

    a. negligently placing a violent inmate in Plaintiff's cell, which was exclusively assigned to Plaintiff;

    b. the negligent tactics and handling of the attack on Plaintiff;

    c. negligent supervision and communication with and by tower officers to facilitate safe and appropriate movement through the facility;

    d. negligent transport and escort of inmates;

    e. the negligent treatment of Plaintiff after he received serious injuries from the attack;

    f. negligently following necessary and appropriate safety measures;

    g. negligently failing to follow its own established safety procedures;

    h. the negligent hiring, retention and assignment of its employees, including the individual defendants;

    i. negligent supervision of inmates in housing units and those segregated for administrative measures;

    j. negligent in preventing the introduction and/or production of weapons or contraband in the institution;

    k. negligent in monitoring and observing inmate traffic;

    l. failing to provide necessary and appropriate personnel necessary for the safety, welfare and protection of Plaintiff.

59. As a direct and legal result of defendants' acts and omissions, and the ensuing injuries to Plaintiff, Plaintiff has suffered damages, including, without

limitation, medical expenses, and the past and future pain and suffering all to his general and special damages according to proof, including attorneys' fees, costs of suit, and other pecuniary losses not yet ascertained.

60. As a direct and legal result of their conduct, defendants are liable for plaintiff's damages, either because they were integral participants in the negligence, or because they failed to intervene to prevent these violations.

## FIFTH CLAIM FOR RELIEF
## NEGLIGENT HIRING, TRAINING, AND RETENTION
### (Against all Defendants)

61. The allegations set forth in paragraphs 1 through 60 are incorporated herein by reference.

62. Defendants the STATE, CDCR and DOE supervisors possessed the power and authority to hire and fire employees of CDCR and based upon information and belief and negligently hired defendants, CLARKE, MAKARDE, MASON, MAUX, GRAVES, and DOES 1 - 10, entrusted them with the following duties: protect inmates, conduct reasonable investigations based upon reasonable beliefs that persons have been harmed, or property has been stolen or destroyed, and cause persons who commit crimes on property to be arrested.

63. By virtue of the foregoing, defendants owed Plaintiff a duty of due care, and that duty was breached by defendants' negligent and careless manner in hiring, training, supervising and retaining by, among other things:

    a) Failing to adequately train its officers in the supervision and maintenance of inmates in housing units and those on administrative segregation;

    b) Failing to adequately train its tower officers to keep oversight and maintain safe movement of inmates;

    c) Failing to adequately train its officers to properly respond and interfere with an ongoing assault by inmate against another inmate;

    d)    Failing to adequately train its officers in identifying where the inmates belong;

    e)    Failing to adequately train officers to follow procedure of checking logs and lists to identify where inmates live;

    f)    Failing to provide adequate supervisory control over the actions of its officers in regard to adequate training, supervision, equipment, planning, oversight, and administration;

    g)    Sanctioning, condoning and approving a law enforcement-wide custom and practice of a code of silence, cover-up and dishonesty.

64.  As a direct and proximate cause of the aforementioned acts of defendants, plaintiff was injured as set forth above and are entitled to compensatory damages according to proof at the time of trial.

65.  By reason of the aforementioned policies and practices of Defendants, the STATE, CDCR, CLARKE, MAKARDE, MASON, MAUX, GRAVES, and DOES 1 - 10, inclusive, plaintiff was injured in his health, strength and activity, and sustained great injuries and damage as described elsewhere herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request entry of judgment in their favor and against Defendants the STATE, CDCR, CLARKE, MAKARDE, MASON, MAUX, GRAVES, and DOES 1 - 10, as follows:

1.    For compensatory damages in the amount of $10,000,000;

2.    For punitive damages against the individual defendants in an amount to be proven at trial;

3.    For interest;

4.    For reasonable costs of this suit and attorneys' fees per 42 U.S.C. §1988; and

5. For such further other relief as the Court may deem just, proper, and appropriate.

THE SEHAT LAW FIRM, PLC

Date: 9/25/15

By: _____
Cameron Sehat,
Attorney for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial.

THE SEHAT LAW FIRM, PLC

Date: 9/25/15

By: _____
Cameron Sehat,
Attorney for Plaintiff